IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AEP ENERGY SVC, INC.,
*et al.*,
        Plaintiffs,

  vs.                                                Civil Action 2:03-CV-335
                                                     Judge Graham
BANK OF MONTREAL,                       Magistrate Judge King

        Defendant.

ORDER

        On March 18, 2005, the United States Magistrate Judge granted plaintiffs' motion to compel production of a report and other documents relating to an audit conducted by the defendant Bank of Montreal. Doc. No. 100. This matter is now before the Court on defendant's objections to that order. Doc. No. 102. This Court will sustain the objections if it is shown that the Magistrate Judge's order "is clearly erroneous or contrary to law." 28 U.S.C. §636(b)(1)(A).

        Defendant takes the position that the audit and related documents were generated at the request of its general counsel in anticipation of litigation and are therefore protected by the work-product doctrine. *See* F.R. Civ. P. 26(b)(3); *Toledo Edison Co. v. GA Technologies, Inc.,* 847 F.2d 335, 339-40 (6th Cir. 1998). In rejecting this argument, the Magistrate Judge reasoned that the audit would have been conducted irrespective of the litigation:

> There is no question that the documents sought by plaintiffs are relevant to this action. Moreover, plaintiffs expressly exclude from their discovery requests documents protected by the attorney-client privilege. The first sequential step of the *Toledo Edison* analysis has therefore been satisfied. The burden at this point shifts to BMO to establish that the requested documents were prepared in anticipation of litigation or for trial.
>
> The parties disagree whether the audit was conducted at the request of BMO's senior business officials or its general counsel; both sources

> articulated the need for audit. On March 24, 2003, BMO's vice president for Market Risk characterized a review, "by Compliance (or, ... Corporate Audit)," of the AEP transaction of March 14, 2003, as "appropriate." Exhibit I, attached to *Plaintiffs' Motion to Compel;* Exhibit R, attached to *Reply*. BMO's executive vice president and senior risk officer of its Investment Banking Group also wanted BMO's corporate audit group to review the transaction, Exhibit T, attached to *Reply.*
>
> However, on March 28, 2003, BMO's general counsel, Ronald Sirkis, verbally requested that BMO's chief auditor undertake an audit of the transaction and expressly stated that the audit was to be performed in anticipation of litigation and under the direction of counsel. *Declaration of Christopher B. Begy,* at ¶2, attached to *Memorandum contra.* No one from any other business group of BMO participated in the conduct of the audit. *Id.,* ¶¶3,8.
>
> The complaint in this action was filed on April 14, 2003. The final audit report was produced on April 22, 2003, and the documents associated with the audit were at all times treated and denominated as confidential and prepared in anticipation of litigation with AEP. *Id.,* ¶4.
>
> This Court concludes that BMO has not established that the audit was conducted in anticipation of or because of litigation. Although a real possibility of litigation indisputably existed throughout the period that the audit was conducted, it is clear to the Court that an audit at the AEP transaction would have been conducted for business reasons and irrespective of the litigation. *See United States v. Adelman,* 134 F.3d 1192, 1202 (2nd Cir. 1998). *See also Madink v. United States DOI,* 298 F.3d 60, 70 (1st Cir. 2002); *In re OM Group Securities Litigation,* __ F.Supp. 2d. __, 2005 WL 602346 (N.D. Ohio 2005); *Caremark, Inc. v. Affiliated Computer Servs.,* 195 F.R.D. 610, 614 (N.D. Ill. 2000). Accordingly, the audit report and related documents are not protected from discovery by reason of the work-product doctrine.

*Opinion and Order,* at pp. 5-6, Doc. No. 100 [footnote omitted].

The evidence before the Magistrate Judge established that defendant's business executives initiated the audit process prior to any involvement by its general counsel. Moreover, defendant's chief operating officer, Yvan Bourdeau, testified on deposition that the audit

2

report addressed the very issues addressed by the business executives. *Bourdeau Deposition,* at pp. 86-88, attached as Exhibit J, to *Plaintiffs' Motion to Compel,* Doc. No. 76.

Under these circumstances, it cannot be said that the audit process, initiated by business executives but thereafter overseen by defendant's general counsel, was conducted *because of* the litigation. The Court therefore concludes that the Magistrate Judge's *Order* is neither clearly erroneous nor contrary to law.  Defendant's objections to that order are therefore **DENIED**.

In light of the foregoing, defendant's motion to stay the effect of the Magistrate Judge's order pending consideration of its objections thereto, Doc. No. 103, is **DENIED** as moot.

                                           s/James L. Graham
                                           JAMES L. GRAHAM
                                           United States District Judge

DATE:  June 16, 2005